In re POWER RECOVERY SYSTEMS,
INC., Debtor (Two Cases).

David W. ECK, Appellee,

v.

DODGE CHEMICAL COMPANY,
Appellant.

David W. ECK, Appellant,

v.

DODGE CHEMICAL COMPANY,
Appellee.

Nos. 91–1397, 91–1398.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1991.

Decided Nov. 27, 1991.

Blake J. Godbout with whom Blake J. Godbout & Associates, Boston, Mass., was on brief for David W. Eck.

Brian C. Levey with whom Kenneth R. Berman and Sherin and Lodgen, Boston, Mass., were on brief for The Dodge Chemical Co., Inc.

Before BREYER, Chief Judge, BROWN,\* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

\* Of the Fifth Circuit, sitting by designation.

1. Debtor, Power Recovery Systems Inc., leased the property from Dodge.

2. The notice provided that "other terms of the sale will be announced at the auction." At the auction, the auctioneer announced that buyers

**JOHN R. BROWN, Senior Circuit Judge:**

This imbroglio arises from David Eck's failure to remove heavy equipment from Dodge Chemical Company's property. Eck purchased the equipment at the auction sale held in connection with Debtor's bankruptcy proceedings.[1] After Eck refused to adhere to the bankruptcy court's order compelling removal of the equipment, the bankruptcy court held him in contempt. The district court affirmed the bankruptcy court's contempt order, but remitted part of the contempt penalty imposed. At bottom, is Eck's failure to file a timely appeal from the bankruptcy's court order compelling removal of the purchased property. We affirm.

Eck claims that the bankruptcy court erred by 1) denying his request to extend the time for filing an appeal of the January order compelling removal; 2) holding him in contempt and awarding punitive damages in a civil contempt proceeding; and 3) denying his motion for a stay pending this appeal.

### You Buy It, You Remove It

Power Recovery Systems, Inc. ("Debtor") leased the Cambridge premises from Dodge Chemical Company in order to conduct its waste energy systems research business. In Debtor's Chapter 11 bankruptcy proceeding, Debtor gave notice that it would sell its equipment, inventory, and fixtures located on these leased premises.[2] The property was huge, heavy and difficult to move.[3] The bankruptcy court authorized a sale by public auction, which was held on June 29, 1988.

Eck purchased this equipment for $40,-000.00. The express terms of the sale required the buyer to remove the property from the premises within 30 days.

would have thirty days from the date of the sale to remove the property from the premises.

3. The equipment consisted of a combustor, hammer mill, bag house, gasifier and other items, which completely filled the 20,750 square feet warehouse.

## Tardiness Sets In

Six months later, Eck's equipment continued to occupy Dodge's property. On January 18, 1989, Dodge filed a motion with the bankruptcy court seeking an order to enforce the removal terms of the auction sale. At the hearing on this motion on January 25th, the court found that Eck failed to remove the property within the required 30 days, and ordered that Eck "must remove the property forthwith and ... must make arrangement for occupancy of [the] premises until the date the property is removed from the premises."[4]

■ Eck complains, without offering supporting evidence, that he did not attend the January hearing; that he was given insufficient notice of the hearing; and unfairly denied a continuance by opposing counsel. Despite Eck's absence, it is uncontradicted that Eck's attorney received timely notice of the hearing, notified Eck prior to the hearing and was at all times present at the hearing on Eck's behalf. This is sufficient.

## Failure to Appeal

Although Eck has timely appealed the bankruptcy court's contempt order, and the district court's denial of his motion to excuse his untimely appeal, discussed *infra*, he has thus far failed to preserve for appeal whether the bankruptcy court's January order compelling compliance with the terms of the auction sale is vulnerable.

■ Instead, on February 9, 1989, Eck filed with the bankruptcy court a motion for reconsideration of the January order. Like a notice of appeal, a motion for re-

hearing is required to be filed within 10 days after the entry of an order.[5] Because the order was entered January 25, 1989, Eck's motion for reconsideration had to be filed February 6, 1989 and thus was three days late.

### a. No excuse

Nevertheless, Eck did request the bankruptcy court to grant him an extension to file an appeal of the January 25th order to the district court. He claims that it was an abuse of discretion for either or both the bankruptcy court and district court to have denied his request. We disagree.

With no earlier notice of appeal, Eck, on February 27, 1989, filed a motion to extend time for filing. Bankruptcy rule 8002(c) provides:

> The Bankruptcy Court may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect....

Consistent with his pattern of dilatoriness, Eck's February 27th motion for an extension was more than 20 days late. Thus, Eck's motion for an extension of time to file a notice of appeal could be considered only by a showing of excusable neglect.

■ Eck cites, among other reasons,[6] that he failed timely to file the extension

---

**4.** The record shows that at the hearing, Eck's counsel asserted, with no evidence being offered or even proffered, that several attempts were made to remove the property from Dodge's premises, but that all attempts were unsuccessful due to Dodge's failure to provide electricity at the premises. The fact remains, however, that Eck's failure to make this known to the court prior to the court's January compliance order, along with his failure to timely appeal this order, precludes this court from reaching this issue.

**5.** Rule 8002(a) provides that "the notice of appeal shall be filed with the clerk of the bank-

ruptcy court within 10 days of the date of the entry of the judgment, order, or decree appealed from."

Similarly, Rule 9023, via F.R.Civ.P. 59, explains that motions for rehearing are required to be made within 10 days after the entry of an order.

**6.** To support his claim of excusable neglect, Eck argues that 1) he was not personally served; 2) his attorney informed him of the hearing on January 25, 1989 only 48 hours in advance; 3) he was unable to attend; and 4) Dodge denied him a continuance. These facts or events occurring prior to the entry of the January 25th

because he focused solely on permanently resolving the dispute. The record, although lacking proffered evidence, is clouded with assertions by both parties that after the January 25th hearing, Dodge and Eck respectively began negotiations to lease the premises and sell the equipment to a third party, Metropolitan P.M.C., Inc. The deal, if there really was a deal, eventually fell through.[7]

Even if the bankruptcy or district court had accepted Eck's argument about missing the deadline due to his efforts to settle this matter, neither court was required to conclude that this would satisfy the contradictory term "excusable neglect."

Whether it is necessary, wise or even appropriate to confine the obviously discretionary "excusable neglect" to rigid formulae, we need not here declare.[8] Other courts have declined to accept as excusable neglect situations more compelling than what Eck urges.[9]

The question of excusable neglect is by its very nature left to the discretion of the bankruptcy court whose decision should not be set aside unless the reviewing court, a district court or court of appeals, has a definite and firm conviction that the court below committed a clear error of judg-

ment.[10] The bankruptcy court's decision to deny the extension was well within its discretion and the district court properly affirmed this denial.

### Contempt of this Neglected Court

Despite the bankruptcy court's unappealed January order compelling compliance, Eck's equipment continued to sit in Dodge's warehouse in February. On February 3, 1989, Dodge filed a motion to hold Eck in contempt for non-compliance with the court's January 25th order. On February 23, 1989, after notice and hearing, bankruptcy court held Eck in contempt,[11] determining first that Eck had not removed the equipment, nor paid occupancy charges, in violation of its January 25th order. Second, the bankruptcy court found that $330 per day was a reasonable charge for the use of the premises,[12] and awarded Dodge:

(1) $330 per day from January 30, 1989 through February 13, 1989;

(2) $330 per day from February 13, 1989 through February 28, 1989 if Eck removed the equipment before February 28th; and

(3) $1000 per day from February 13, 1989 until removal if removed after February 28th.

order, however, have no bearing on his failure to timely file his motion for reconsideration to the bankruptcy court, or his notice of appeal or request for extension to the district court by February 6, 1989.

**7.** *See* Eck's Brief at 15..

**8.** Excusable neglect has been defined as a failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform. *In re Biddy,* 7 B.R. 50, 52 (Bankr.N.D.Ga.1980).

**9.** *See In re W & L Assoc., Inc.,* 74 B.R. 681 (Bankr.E.D.Pa.1987) (errors by clerical personnel in office of appellant's counsel, unreported changes of counsel, and reassignment of case to different counsel failed to satisfy extremely strict standard for showing excusable neglect); *In re Snow,* 23 B.R. 655 (Bankr.Cal.1982) (mere difficulty with office help, inadvertence and press of other matters were insufficient to constitute excusable neglect); *Matter of Estate of Butler's Tire and Battery Co.,* 592 F.2d 1028 (9th Cir.1979) (inadvertence or mistake of counsel did not constitute excusable neglect); *Matter of Morrow,* 564 F.2d 189 (5th Cir.1977) (the fact

that counsel was occupied by a heavy workload in state court did not constitute excusable neglect).

**10.** *Matter of Washington Group, Inc.,* 476 F.Supp. 246 (D.N.C.1979), *aff'd* 636 F.2d 1213, 1215 (4th Cir.1980).

**11.** At the contempt hearing, Eck's counsel urged, without offering any legal proof, cross-examination or the like, that he attempted to remove the property on January 26, but failed to gain access due to the inoperability of main entrance doors. Dodge's counsel responded that they were first notified of the problem on January 27 and had it corrected by January 31. This issue should have been substantiated and detailed in the form of a timely appeal of the January 25 order to the district court. Eck's failure to file an appeal of this order prevents him from offering these excuses to this court.

**12.** The court heard evidence from both parties and determined that the rental value of the premises was at least $10,000 per month, or $330 per day.

Eck appealed the bankruptcy court's contempt order to the district court. The district court affirmed the contempt order, but modified the monetary sanctions by eliminating the $670 per day portion of the award, for the period beginning March 10, 1989 and ending July 10, 1990.[13]

We must uphold the factual findings of the bankruptcy court, as affirmed by the district court, unless they are clearly erroneous.[14] In a record in which Eck failed to either contest the uncontradicted fact of obvious non-compliance or offer to the court acceptable reasons for non-compliance, we have no difficulty in holding the findings well above the Plimsoll Line.[15]

Eck primarily argues that the bankruptcy court abused its discretion in holding him in contempt because (1) he was no longer the legal owner of the equipment, and was thus unable to comply with the January 25th order; and (2) even if the contempt order was supported by the law, the sanction of $1000 per day was excessive, constituting an impermissible punitive penalty, rather than compensatory damages.

■ It is well-settled law that bankruptcy courts are vested with contempt power.[16] Bankruptcy rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of the procedures are given.

■ In deciding whether a proceeding before a lower court involves civil or criminal contempt, we are required to look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below.[17]

■ Sanctions in a civil contempt proceeding are employed to coerce the defendant into compliance with the court's order or, where appropriate, to compensate the harmed party for losses sustained.[18] These sanctions are not punitive, but purely remedial.[19]

■ Where the purpose of a monetary sanction is to make the defendant comply, the court has wide discretion in considering the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance and the like.[20]

13. The district court specifically held:
(1) the bankruptcy court's denial of Eck's request to extend time for filing an appeal was not an abuse of discretion [the bankruptcy court's denial, discussed *supra*, relates solely to Eck's attempted appeal of the January order enforcing the terms of the auction sale];
(2) the bankruptcy court's findings of fact supporting its contempt order were not clearly erroneous; and
(3) because the delay in the appeal was not Eck's fault, Eck will not be charged with paying the coercive part of the damages from 3/10/89—7/10/90. [*But see, infra,* the district court's partial restoration of this penalty on rehearing for the period from 5/22/89 until 6/30/89.]

14. *See In re Roco Corp.,* 701 F.2d 978, 981 (1st Cir.1983); Bankr.R. 8013; F.R.Civ.P. 52(a). The Advisory Committee Note to rule 8013 states that 8013 gives fact findings the same weight as F.R.Civ.P. 52(a) does for district judges.

15. *See Candies Towing Co. v. M/V B & C Eserman,* 673 F.2d 91, 93 (5th Cir.1982), where the court had no lingering doubts about whether the fact findings were above the Plimsoll Line.

16. *Fernos–Lopez v. U.S. Dist. Ct.,* 599 F.2d 1087, 1090 (1st Cir.1979).

17. *In re Kave,* 760 F.2d 343, 351 (1st Cir.1985). Once again, to keep from committing hari-kari in my own circuit, I must point out that in the Fifth Circuit, bankruptcy courts lack the power to hold persons in criminal contempt. *See, e.g., Matter of Hipp, Inc.,* 895 F.2d 1503, 1509 (5th Cir.1990).

18. *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884, 917–18 (1947) (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 805 (1911)).

Criminal contempt sanctions, on the other hand, are punitive in their nature and are imposed for the purpose of vindicating the authority of the court. *United Mine Workers,* 330 U.S. at 302, 67 S.Ct. at 700, 91 L.Ed. at 917. The contemnor in a criminal contempt case is entitled to a hearing, proof beyond a reasonable doubt and all the protections afforded those accused of a crime. *See* F.R.Crim.P. 42(b).

19. *G. & C. Merriam Co. v. Webster Dictionary Co.,* 639 F.2d 29, 41 (1st Cir.1980) (citing *Parker v. United States,* 153 F.2d 66, 70 (1st Cir.1946)).

20. *United Mine Workers,* 330 U.S. at 303–04, 67 S.Ct. at 701, 91 L.Ed. at 917–18.

■ By all the words and handling, this is a civil contempt case. The bankruptcy court's sanctions were both to compensate Dodge for the rental value of the premise equipment and to coerce Eck, someway, somehow, sometime, to expedite the removal. Because the $330 per day compensatory portion of the award represented the loss to Dodge, we have no basis for disturbing it.

Since Eck did not, in fact, remove the property by February 28, the alternative sanction of $1000 per day became effective. Though this exceeded by $670 what he would have otherwise been charged ($330), it was not a criminal penalty for past failure to comply. It, like the initial $330 per day, was simply further means of coercing compliance. We reiterate that this portion of the sanction was prospectively contingent upon Eck's continuing failure to comply, and was neither a criminal penalty, nor an unreasonable additional sanction to bring about compliance. We affirm the award of $670 per day.

■ Eck argues that because he sold the equipment to Metropolitan on February 15th, and was no longer the legal owner of the equipment, with no right to remove it, he could not, by these coercive sanctions, lawfully be compelled to remove it. Granted, a party may defend contempt and failure to comply on the grounds that compliance was impossible;[21] self-induced inability, however, does not meet the test.[22]

Illustrative is *Pesaplastic, C.A. v. Cincinnati Milacron Co.*[23] Affirming, the Eleventh Circuit reasoned that the contemnors could not "raise the defense of impossibility because their own actions were responsible for their subsequent inability to comply."[24]

Much the same was *United States v. Hayes,*[25] in which the district court refused to find the contemnor in contempt because he made "some effort" to comply. The Eleventh Circuit reversed, stating:

> Even if the efforts [Hayes] did make were 'substantial,' 'diligent,' or in 'good faith,' as the court so characterized them ... the fact that he did not make 'all reasonable efforts,' *United States v. Rizzo,* 539 F.2d [458] at 465 [ (5th Cir.1976) ], establishes that Hayes did not sufficiently rebut the IRS' prima facie showing of contempt. The court's use of a 'some effort' standard for measuring the strength of Hayes' defense was, therefore, an abuse of discretion.[26]

Because we have no difficulty in adopting the reasoning of the Eleventh Circuit,[27] we hold that the defense of impossibility

---

**21.** *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2d 1510, 1521 (11th Cir.1986); *United States v. Hayes,* 722 F.2d 723, 725 (11th Cir. 1984); *United States v. Asay,* 614 F.2d 655, 660 (9th Cir.1980).

**22.** *Asay,* 614 F.2d at 660.

**23.** 799 F.2d 1510 (11th Cir.1986). The district court held the defendant, Trudeth, and its law firm in contempt for their failure to produce documents in violation of the court's earlier discovery order. In defense, Trudeth and the law firm argued that they were powerless to comply with the order of production because another corporation was now in possession of the documents by virtue of its purchase of Trudeth's assets. Further, they urged that all attempts to persuade this corporation to return the documents were futile.

**24.** *Pesaplastic,* 799 F.2d at 1521–22.

**25.** 722 F.2d 723 (11th Cir.1984). The district court ordered Hayes to produce documents pertaining to certain tax shelters he sold and

managed. The IRS brought contempt proceedings after Hayes only partially complied.

**26.** *Id.* at 725.

**27.** Although the First Circuit has not spoken at length about impossibility as a defense to civil contempt, it has addressed in some detail the related defenses of good faith and substantial compliance. *See Fortin v. Comm'r,* 692 F.2d 790, 796–97 (1st Cir.1982) (court stating that "impossibility would be a defense to contempt, but the Department has the burden of proving impossibility, and that burden is difficult to meet. Although diligence is relevant to the question of ability to comply, the Department's evidence of diligence alone does not satisfy that burden." [citations omitted] ). *Compare with Morales–Feliciano v. Parole Bd.,* 887 F.2d 1 (1st Cir.1989) (substantial compliance with order did not invalidate contempt finding since fundamental interests were affected, nor did good faith efforts constitute sufficient legal excuse for noncompliance.)

can not be raised in this case.[28] Despite Eck's supposed sale to Metropolitan, this voluntary sale, if indeed ever made, was made after the issuance of the compliance order. The law will not allow such an easy way out of obligations imposed by a court on any party or person. Eck was required to exhaust "all reasonable efforts" and he failed to meet this burden.

We therefore conclude the district court correctly affirmed the bankruptcy court's contempt order and award of compensatory and coercive sanctions.

### Remittitur & Reinstatement

■ The district court, feeling that much of the time lost was due to the court's inability to rule sooner, decided that in this equitable setting Eck should not be charged with all the delay. The court remitted the $670 per day sanction from March 10, 1989 until July 10, 1990, the period spanning from the date of filing of Eck's appeal to the district court to the date of the district court's ruling.[29]

Upon Dodge's motion for rehearing, the district court partially reinstated the $670 per day sanction. Since Eck filed four motions to extend time for filing his appeal, consuming 39 days, the district court reinstated the $670 per day sanction for these 39 days.

Dodge, by cross-appeal, urges that the district court abused its discretion in remitting coercive damages from March 10, 1989 until July 10, 1989. Eck, on the other hand, urges that the partial reinstatement should be set aside and the initial remission sustained.

Whether reviewed on a clearly erroneous or abuse of discretion standard, we find no need to disturb the action of this considerate, patient trial judge.

### Payment Can't Wait Any Longer

■ As a last gasp, Eck asserts error in the denial of his motion to stay the contempt order, pending appeal to this court.[30] It suffices to say that Eck must lose on this contention, since this court's affirmance shows that Eck would have failed on the first test, which establishes that there is a strong likelihood of success on the merits of the appeal.[31]

Neither the bankruptcy court nor the district court can be faulted for their decision on any one, or more, or even all of Eck's attacks.

AFFIRMED.

**28.** Again, we emphasize Eck's failure to appeal the court's January order compelling removal. In addition, the record, which is full of unsupported assertions, reeks with doubt about Eck's sale and Dodge's lease to Metropolitan.

**29.** The district court determined that because the delay in the appeal was not Eck's fault, Eck would not be charged with paying the $670 per day portion of the award from 3/10/89 through 7/10/90.

**30.** Eck primarily complains that a stay should have been granted pending the outcome of a lawsuit filed by Dodge in state court regarding the same series of events. The action was filed by Dodge in the Middlesex Superior Court of Massachusetts on December 1, 1989 and is entitled Civil Action No. 89–7988, *Dodge Chem. Co. v. Eck, Burns, Ellis and Metropolitan (Defendants) and Galatis, Hagedorn, Harring, and Remmer (Reach-and-Apply Defendants)*. Dodge

sought damages from Eck for use and occupancy from July 29, 1988 until January 25, 1989. Dodge also sought damages from parties including Burns, Ellis and Metropolitan for use and occupancy beginning on February 11, 1989. A default judgment was entered against the parties on January 24, 1990 in the amount of $159,-060.00. As of the time of filing of briefs, Dodge has received $10,000.00 in payment for this judgment.

**31.** To satisfy the standard for the issuance of a stay, the movant must establish that there is a strong likelihood of success on the merits of its appeal; that he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay. *Morgan v. Kerrigan*, 523 F.2d 917, 920 (1st Cir.1975). Failure to meet even one of the criteria justifies denial. *In re Max Sung Hi Lim*, 7 B.R. 319, 321 (Bankr.D.Haw.1980).