# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1913

_____

Chicago Truck Drivers, Helpers and    *
Warehouse Workers Union Pension    *
Fund, a pension trust; George Ossey,    *
Tony Cullotta, John Broderick, and    *
William H. Carpenter, the present    *
trustees,    *
   *
       Plaintiffs-Appellants,    *
   *      Appeal from the United
       v.    *      States District Court for
   *      the Eastern District of
Brotherhood Labor Leasing, a Missouri    *      Missouri
corporation; MFI Leasing Company, a    *
Missouri corporation; Falls City    *
Industries, Inc., a Kentucky corporation;    *
and Middlewest Freightways, Inc.,    *
a Missouri Corporation,    *
   *
       Defendants-Appellees.    *

_____

Submitted: January 10, 2000

Filed: March 24, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP, District Judge.[1]

_____

[1] The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

_____

ALSOP, District Judge.

Appellants, Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund and its present trustees (the "Fund"), moved before a magistrate judge for certification of facts supporting a finding of contempt against the Appellees and their sole officer and shareholder, Steven Gula. The magistrate judge denied the motion, finding that the Fund was "unable to produce evidence sufficient for a finding that the defendants have assets for making the judgment debt payments." We remand.

## I.

The Fund sued Gula's corporations, but not Gula personally, for interim payments of withdrawal liability under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1405. The parties consented to have a magistrate judge[2] hear and decide the case. On December 4, 1996, the district court granted the Fund's motion for summary judgment and ordered the Appellees to commence making interim payments within sixty days.

When the Appellees failed to pay as ordered, the Fund sought to amend the judgment to require that the Appellees make all past-due interim payments plus interest. The Fund's motion also sought attorneys' fees and prospective relief, in

_____

[2] We refer to the magistrate judge as the "district court" through the remainder of this opinion.

-2-

the form of an order directing that the Appellees make future interim payments in accordance with a schedule determined by the court. On June 25, 1997, the district court granted the Fund's motion and issued an amended judgment that required Appellees to pay all past-due amounts, attorneys' fees and expenses, and future quarterly interim payments on a prescribed schedule commencing on August 1, 1997 and continuing through February 1, 2003. Both the initial and amended judgments contained no reference to either Gula specifically or the Appellees' officers or other agents generically.

On March 18, 1998, this Court affirmed without comment the judgments of the district court. *Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing*, 141 F.3d 1167 (8th Cir. 1998) (table decision).[3] The Supreme Court subsequently returned Appellees' petition for certiorari as untimely filed.

In November 1998, having received none of the court-ordered payments, the Fund filed a motion for contempt and sanctions against the corporate Appellees and Gula personally. The district court issued an order to show cause why they should not be held in contempt. At the hearing on the show cause order, the court took no testimony but instead ordered that Gula submit to a judgment debtor examination by way of deposition. *See* FED. R. CIV. P. 69(a). In ordering the deposition, the court observed that the Fund was "entitled to a fair opportunity to locate the assets of the judgment debtors, and to levy execution of them to the extent the law allows."

---

[3] A panel of this Court also considered a collateral sanctions issue in *Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing*, 166 F.3d 1269 (8th Cir. 1999).

The Fund took Gula's deposition on February 9, 1999. He acknowledged that the Appellees' corporate books and accounts had been his responsibility since 1992. He confirmed that he prepared and signed the 1997 consolidated federal tax return for Appellee MFI Leasing Company ("MFI") and its subsidiaries.[4] That tax return's balance sheet showed a $182,000 cash and cash equivalents balance as of December 31, 1997. Gula testified that he calculated this amount from MFI's bank statement. When asked to produce the statement, Gula replied that he had a practice of destroying all bank statements and canceled checks after filing the tax returns, "because of space."

The same tax return showed an $89,000 cash value life insurance balance as of December 31, 1997. Gula testified that he cashed out the policies sometime in April or May of 1998—after losing the appeal in this case—and endorsed the checks over to the Appellees' lawyers.

Gula also testified that one of the corporate Appellees received "somewhere around" $26,000 from a mortgage debtor "to generate cash to pay legal fees . . . somewhere in like April to August of '97." When asked what he did with this money, Gula replied that he wrote checks, from that and other of the Appellees' accounts, for "over the last few years, hundreds of thousands of dollars for attorneys fees." He estimated that the total amount of legal fees he paid was "a little bit more than three hundred thousand dollars."

---

[4] It appears from the tax returns that, at least at times relevant, Appellees Falls City Industries, Inc. and Middlewest Freightways, Inc. were wholly-owned subsidiaries of Appellee MFI.

Following Gula's deposition, the district court resumed its earlier hearing on the motion for contempt. Appellees' counsel essentially conceded that the Fund had established the following: (1) Appellees had made none of the ordered payments, and (2) at the time the payments were due, the Appellees had the financial resources to make at least some of those payments. Counsel explained that the Appellees, relying on the advice of their then-lawyers, used those resources to pay their legal fees instead.

The Fund presented this evidence concerning the Appellees' assets, and the dissipation of those assets. The Fund then rested, saying it had "no further evidence at this time." The court asked defense counsel if it had any evidence "in response to the pending motion." Defense counsel replied, "I don't either."

On February 17, 1999, the district court issued a two-page order denying the contempt motion. In that order, the court wrote:

> During the pendency of the motion, the Court allowed the plaintiffs to conduct discovery of available information about the defendants' assets. Following this discovery, plaintiffs have been unable to produce evidence sufficient for a finding that the defendants have assets for making the judgment debt payments but did not do so.

The Fund appeals from this order.

## II.

We review the denial of a contempt order for abuse of discretion. *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917 (8th Cir. 1998). The party moving for contempt sanctions bears the burden of proving facts

warranting a civil contempt order by clear and convincing evidence. *Id.*

The Fund argues that the district court abused its discretion by improperly placing the burden on the Fund to prove that the Appellees had a present ability to pay the amounts ordered. It argues that established contempt law only requires the movant to show that the alleged contemnors violated a court order, and the alleged contemnors bear the burden of showing their inability to comply.

The Appellees respond that the district court, in a proper exercise of its discretion, chose to enforce its payment orders through judgment debtor discovery and execution. They contend that the district court properly concluded that use of its contempt power would be "premature." They also argue that they sufficiently established a present inability to comply with the payment orders. Finally, they argue that they reasonably relied on their prior counsel's advice to pay counsel instead of the Fund.

**III.**

One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject. *United States v. United Mine Workers*, 330 U.S. 258, 290 n. 56 (1947). The Supreme Court has observed that, without the contempt power, "what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Id.*

In a proceeding before a magistrate judge, disobedience of a lawful order

"shall constitute a contempt of the district court for the district wherein the magistrate is sitting." 28 U.S.C. § 636(e). Although magistrate judges do not themselves have contempt power, they may certify any contemptuous acts or conduct to a district judge, who may then adjudge that person or party in contempt "by reason of the facts so certified." *Id.*

Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both. *United Mine Workers*, 330 U.S. at 303-04. Either incarceration or a fine may accomplish the purpose of coercion, while, "[w]here compensation is intended, a fine is imposed, payable to complainant." *Id.* at 304; *see also United States v. Onan*, 190 F.2d 1 (8th Cir.) (holding that a court has the power to impose a fine for civil contempt), *cert. denied*, 342 U.S. 869 (1951). In the ERISA context, civil contempt may also be employed to sanction those who disobey an interim withdrawal payment order. *Central States Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998).[5] It is with these purposes in mind that we turn to address what transpired in this case.

---

[5] *Wintz* involved facts similar to those present here: the defendant corporation had paid other creditors but not the pension fund, even after the district court issued an interim payment order. *Wintz*, 155 F.3d at 871-72. The district court found the defendant and its corporate officer in contempt and ordered them to pay a monetary sanction intended to reflect the amount they had paid to other creditors. *Id.* at 872. The Seventh Circuit affirmed the contempt sanction against both the corporation and its officer, even though the officer "was not a named party in the underlying litigation." *Id.* at 874.

**IV.**

A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order. *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998). Here, it is undisputed that Appellees have not made any payments pursuant to the court's order. At that point, the burden should have shifted to the Appellees to show an inability to comply. *United States v. Rylander*, 460 U.S. 752, 757 (1983).

It is unclear whether the district court properly considered these burdens in this case. Nowhere in the order denying the contempt motion are the burdens articulated. Two of the court's statements suggest to us that it improperly placed the burden on the Fund to show the Appellees' ability to pay. First, at the hearing held on January 11, 1999, the court stated that it would be the Fund's job "to locate the assets of the [Appellees] and to levy execution on them to the extent the law allows." Second, in the order denying the contempt motion, the court found that "plaintiffs have been unable to produce evidence sufficient for a finding that the Appellees have assets for making the judgment debt payments but did not do so."[6]

We conclude that the district court abused its discretion by improperly

---

[6] Notwithstanding the district court's suggestion that the burden was on plaintiffs to "produce evidence," the district court's inconsistent use of verb tenses—"*have* assets for making the judgment debt payments but *did* not do so"—makes us doubt whether it properly focused on whether the Appellees *had* assets at the time interim payments were due but instead chose to pay other creditors with those assets. We discuss this issue *infra* in Section V.

-8-

placing the burden on the Fund to show the Appellees' ability to pay. We will therefore order the case remanded for additional proceedings. The district court on remand should make explicit findings whether the parties have satisfied their respective burdens.

## V.

We acknowledge that it appears unlikely a contempt finding against the corporate Appellees would serve any useful purpose, since it appears they no longer have any assets. *United Mine Workers*, 330 U.S. at 303-04. We think, however, that the Fund is entitled to further development of the record concerning the dissipation of the Appellees' assets, and an express finding from the court that the Appellees have satisfied their burden on an inability-to-comply defense. On remand, the district court should be guided by the following principles concerning application of this defense.

The Supreme Court has stated that a mere "present inability to comply" is a defense to civil contempt. *Rylander*, 460 U.S. at 757; *compare United States v. Baker*, 721 F.2d 647, 650 (8th Cir. 1983) (citing *Rylander* in holding that alleged contemnors invoking an inability defense have the burden of producing evidence that they were "*then* unable to comply"). At least three circuits, in cases decided since *Rylander*, have suggested that the *Rylander* rule may not go far enough; these courts have recognized that the *reasons* for the alleged inability are often as relevant to a possible contempt finding as the fact of inability itself.

For instance, the First Circuit has held that, while a person may defend a

contempt charge on the ground that compliance was impossible, "self-induced inability . . . does not meet the test." *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir. 1991). In *Power Recovery*, the First Circuit affirmed the district court's contempt finding against a property owner who had failed to comply with a court order to remove his property, even though the owner had since sold the property. *Id.*; *see also Dystar Corp. v. Canto*, 1 F. Supp. 2d 48, 55 (D. Mass. 1997) (finding that contemnors had failed to meet "difficult" burden of defending on impossibility grounds).

The Ninth Circuit has also expressed serious doubt that inability can be a "complete defense" to a charge of civil contempt in cases where "the inability to comply is self-induced." *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). Though not going as far as the First Circuit did in *Power Recovery*, the court questioned whether the inability defense should apply in cases where the inability was "the intended result of [the contemnors'] own conduct." *Id.* at 1239. The court did not answer the question because it found that, in any event, the contemnors had failed to meet their "especially high" burden of proving inability, which the court said required them to prove "categorically and in detail" why they were unable to comply. *Id.* at 1241.

Finally, the Eleventh Circuit has held that, to succeed on an inability defense, an alleged contemnor must "go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir.), *cert. denied*, 506 U.S. 819

-10-

(1992).  The court rejected the contemnor's defense, asserted in response to a disgorgement order, that "all the money . . . was gone," finding that the contemnor had failed to make "in good faith all reasonable efforts" to secure repayment of amounts he had paid to others.  *Id.* at 1527-29.

These cases confirm that a mere assertion of "present inability" is insufficient to avoid a civil contempt finding.  Rather, alleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why "categorically and in detail," *Affordable Media*, 179 F.3d at 1241; (2) that their inability to comply was not "self-induced," *Power Recovery*, 950 F.2d at 803; and (3) that they made "in good faith all reasonable efforts to comply," *Wellington*, 950 F.2d at 1529.

## VI.

We also think the Fund is entitled to further development of the record regarding a possible contempt finding against Gula personally.  The district court made no findings concerning its ability to find Gula, as the sole officer and shareholder of the corporate Appellees, in contempt for violating the court's payment orders.  Gula argues that, because he was not personally named in the payment orders, he may not be held in contempt for violation of those orders.  We disagree.

It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it.  The Supreme Court has long recognized that a person, "not a party to the suit, [may be]

-11-

guilty of contempt for violation of an order of that court, made in such suit, and imposing a fine for such contempt." *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 325 (1904). And Judge Learned Hand explained that, while no court can make a decree that binds "the world at large," a non-party "may be punished if he either "abet[s] the defendant or [is] legally identified with him." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930).

More recently, this court has held that "a nonparty may be held in contempt where the nonparty aids or abets a named party in a concerted violation of a court order." *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998). We said in *Cooper* that the "essence" of this rule is that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abetters, although they were not parties to the original proceeding." *Id.*

*Cooper* concerned the violation of an injunction under Rule 65(d), which provides that an injunction or restraining order is binding "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those in active concert or participation with them who receive actual notice of the order by personal service or otherwise." FED. R. CIV. P. 65(d). The Supreme Court has held that Rule 65(d) applies broadly to any "equitable decree compelling obedience under the threat of contempt," which includes not only injunctions and restraining orders, but also "enforcement orders and affirmative decrees as well." *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75-76 (1967); *see also Central States Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 873-74 (7th Cir. 1998) (holding that an order compelling interim withdrawal

payments "looks like an injunction," and applying Rule 65(d) to it); *Consumers Gas & Oil, Inc. v. Farmland Inds., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) ("The term 'injunction' in Rule 65(d) is not to be read narrowly but includes all equitable decrees compelling obedience under the threat of contempt.").

We have no trouble concluding that, under Rule 65(d) and the cases cited above, the magistrate judge's payment orders were binding upon Gula as the sole shareholder, corporate officer and agent of the Appellees, even though the orders made no specific reference to him. There is no question that he had notice of the orders. And while the district court's June 25, 1997 order establishing a future payment schedule was not labeled an injunction, it looked like one: it compelled the Appellees' affirmative, prospective obedience with it. *See Wintz Properties*, 155 F.3d at 873-74 ("The order instructs [the defendant] to do something—pay the Fund what the statute requires—which after all is the point of an injunction. . . ."); *International Longshoremen's Ass'n*, 389 U.S. at 75. He was sufficiently "legally identified" with the Appellees that he was in a position to carry out acts on their behalf. *Cooper*, 134 F.3d at 920. He therefore may subject to a contempt finding for their violation.[7]

_____

[7] We do not address whether the district court's contempt power might extend to the Appellees' prior counsel, but we note that Rule 65(d) expressly makes injunctions binding upon parties' attorneys. The suggestion that the Appellees' attorneys advised them to pay their legal fees in lieu of making court-ordered payments, if true, is troubling. But we have no occasion to consider the question on this record because the Fund only sought a contempt sanction against the Appellees and Gula, not their lawyers.

We emphasize that our holding is a narrow one.  That Gula may be subject to the court's contempt power for failing to direct his corporations to comply with the payment orders does not mean that Gula can now be held personally liable for the underlying withdrawal payments themselves.  The Fund did not sue Gula initially for the withdrawal payments; it may not now attempt to obligate him for the underlying judgment through a contempt proceeding.  *Cf. Vaughn v. Sexton*, 975 F.2d 498, 504 (8th Cir. 1992) (holding controlling individual of ERISA obligors personally liable for withdrawal payments), *cert. denied*, 507 U.S. 915 (1993).  In the event Gula is ultimately found in contempt, it will be up to the district judge to fashion an appropriate sanction.

## VII.

We note that the Fund had previously taken Gula's deposition, as custodian of the Appellees' records, on October 22, 1997.  There, Gula invoked his privilege against self-incrimination and refused to produce several categories of financial and other documents subpoenaed by the Fund.  The record before us is unclear whether Gula has since produced these documents or otherwise accounted for them, or is continuing to claim privilege with respect to them.

A "claim of privilege is not a substitute for relevant evidence."  *United States v. Baker*, 721 F.2d 647, 650 (8th Cir. 1983) (quoting *Rylander*, 460 U.S. at 761).  If Gula continues to assert a privilege concerning evidence that would tend to prove the Appellees' inability to comply with the magistrate judge's payment orders, the district court may properly disregard Gula's testimony entirely.  *Id.* (affirming district court's contempt finding against corporate officer asserting Fifth

-14-

Amendment privilege); *see also United States v. Rue*, 819 F.2d 1488, 1494-95 (8th Cir. 1987) (holding that a contemnor may not satisfy his burden, on a defense of inability, by simply alleging it and "thereafter standing mute and asserting a Fifth Amendment privilege"); *cf. United States v. Lopiparo*, 216 F.2d 87, 91 (8th Cir. 1954) (affirming contempt finding and upholding district court's discrediting of contemnor's testimony on inability where his "self interest was obvious [and] [h]is defense was . . . easily fabricated and almost impossible to disprove"), *cert. denied*, 348 U.S. 916 (1955).

## VIII.

The district court abused its discretion by placing the burden on the Fund to show that the Appellees had the present ability to comply with the court's interim payment orders. The district court also abused its discretion by making no express findings concerning whether Gula committed acts which might support a finding of contempt against him personally. We therefore remand for additional proceedings consistent with this opinion.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-15-