MELLOY, Circuit Judge,
dissenting.
I respectfully dissent from the majority opinion. I believe that the lawyers in this case are being penalized for doing what lawyers do. That is, they give advice to clients, sometimes clients who are in financial distress, and get paid for that advice. The district court, and now the majority, have held that doing so may subject the lawyer to civil contempt and the payment of substantial damages. I believe that such a holding puts at peril any attorney who represents financially distressed clients.
In order to fully address my concerns, I think it is important to set forth a chronology of significant events in this case. The Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund (the “Fund”) and its trustees brought suit against four trucking companies owned by Steven Gula to collect interim payments for withdrawal liability *960 under ERISA. Appellant Dysart Taylor represented the trucking companies during part of that underlying action that gave rise to the finding of contempt.
On December 4, 1996 the district court granted the Fund’s motion for summary judgment. In granting the motion, the court found the defendants liable for the withdrawal of interim payments under ERISA. The district court ordered the trucking companies to begin making interim payments within sixty days. As the majority notes, the Fund, not the defendant, then filed a motion to alter or amend the judgement pursuant to Fed.R.Civ. Proc. 59(e).
The court granted Dysart Taylor leave to withdraw from the case on June 13, 1997. On June 25, 1997 the district court entered an amended judgment against the trucking companies. This amended order clarified the amount owed and the schedule of payments. It required the trucking companies to pay past-due interim payments, liquidated damages, attorneys’ fees and costs, interest, and to make quarterly installments beginning August 1, 1997.
The Fund did not receive any payments by November 1998. Accordingly, the Fund moved to hold the corporate defendants and Steven Gula, the corporate defendants’ sole officer and shareholder, in contempt. The district court denied the motion and the Fund appealed. On March 24, 2000 we remanded the case after concluding that the district court improperly placed the burden on the Fund to show that the alleged contemnors’ inability to pay. Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir.2000) Further, we stated that the Fund was entitled to develop its case against Gula in spite of the fact that he was not named in the prior payment orders.
On remand the Fund filed an amended petition for contempt. The amended petition joined all of the attorneys who had represented the corporate defendants as alleged contemnors, including Dysart Taylor, and the corporate defendants. Following a hearing the district court held that Steven Gula and Dysart Taylor acted in contempt of the court’s directives. The district court found that Dysart Taylor was aware that the corporations’ assets we're insufficient to pay both the Fund and the other creditors, including Dysart Taylor. It also found that the law firm provided legal advice regarding whom to pay. In particular, the district court concluded that Dysart Taylor aided and abetted Gula’s failure to pay the Fund. The district court ordered Dysart Taylor to pay the Fund the amount it had received in payment from the corporations.
The Fund “bears the burden of proving-facts warranting a civil contempt order by clear and convincing evidence.” Indep. Fed’n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir.1998). “The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed.” Mahers v. Hedgepeth, 32 F.3d 1273, 1275 (8th Cir.1994). I do not believe the evidence in this case meets this stringent standard.
When Dysart Taylor received the December 1996 order it was not clear that the order constituted an appealable final injunction. The law firm was faced with advising its client as to what to do. What was the effect of the Rule 59(e) motion? Was the order final, given the filing of the motion to alter or amend? Was the order appealable? Can other operating expenses be paid before payment of the withdrawal liability? Should the company begin paying the judgment (assuming it was a final judgment), appeal, attempt to settle, or file bankruptcy? Dysart Taylor ultimately advised its client that it could pay other creditors and then pay the Fund *961 with any money remaining. Dysart Taylor’s receipt of payment for this representation is what gives rise to this contempt proceeding.
Even if one assumes that Dysart Taylor should have realized the December 1996 order should have been construed as an injunction and gave poor advice, I do not believe its actions rise to the level of aiding and abetting contempt. I part company with the majority when it states that the law firm’s bad faith is immaterial to the court’s finding of contempt. A law firm that gives legal advice in good faith is not subject to contempt as an aider and abettor of its client. See In re Watts 190 U.S. 1, 29, 23 S.Ct. 718, 47 L.Ed. 933 (1903) (“In the ordinary case of advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment.”); Maness v. Meyers, 419 U.S. 449, 467, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) (holding that an attorney is not subject to contempt for good faith legal advice regarding the Fifth Amendment).
In late 1996 and early 1997 the issue of whether the interim order was, in fact, an injunction was not at all clear. At the time the order was entered, even the Magistrate Judge did not believe the order was an injunction as evidenced by his failure to treat it as such in 1996. Although this court stated that the district court’s June 25, 1997 order looked like an injunction even if it was not labeled one, it never addressed whether the December 4, 1996 judgment could be construed as an injunction. Chicago Truck Drivers, 207 F.3d at 507. Further, merely “looking” like an injunction does not satisfy the clear and convincing evidence standard required to make a finding of contempt.
Moreover, at the time of the entry of the December 1996 order, the case law tended to suggest that the order was not an injunction. The only circuit authority on the issue had found that such an interim order for payment of ERISA withdrawal liability was not an injunction. The Seventh Circuit held in a case similar to the case at bar, Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Central Transport, Inc., 935 F.2d 114, 117 (7th Cir.1991), that an interim order under ERISA requiring payments pending arbitration is not an injunction.[4] Accordingly, it was not obvious that the order in this case was an injunction. This uncertainty was exacerbated by the legitimate questions the attorneys had regarding whether the order was a final order since the plaintiff filed a timely motion to alter and amend the judgment pursuant to Fed.R.Civ.P. 59(e). To that end, neither party appealed the judgment, likely due to doubt regarding whether it was ripe for appeal. The Fund never tried to enforce the order. It only started execution proceedings in November 1998, after the entry of the final order in June 1997. Accordingly, I firmly believe the movant fell far short of proving by clear and convincing evidence that the defendant law firm aided and abetted a violation of an injunction when the firm did not even realize that an injunction existed.
Even if there was an injunction in place, it is not impermissible to advise a client regarding how to deal with an injunction order and to get paid for those services. *962 In this case, the attorneys had to review the terms of the injunction, confer with their client, respond to the motion to alter and amend the judgment, and review the available options given the fact that there was insufficient money to pay the judgment. In light of the attorneys reasonable belief that the judgment was not an injunction, much less a final injunction, the attorneys’ advice regarding how to deal with the order was not sufficiently improper as to rise to the level of contempt.
Finally, I am troubled by the majority’s statements that the contempt finding was predicated in part on the fact that, even if there was no injunction, the withdrawal liability was a legal obligation of the company. Slip Opinion at 5. Again, attorneys deal with legal obligations all the time, such as individuals who are delinquent in paying their federal or states taxes, in default on their mortgage, or behind on them credit card payments. Practically every person in a bankruptcy proceeding is delinquent on paying a number of legal obligations. Under the majority’s ruling, a lawyer advising a financially distressed client as to how to deal with competing legal obligations is at risk of a contempt citation for providing such advice and receiving payment for those services. As the petitioner correctly suggests, to expose attorneys to a possible contempt in this situation will temper attorney advocacy and impede clients’ ability to obtain advice when it is most needed. As the Supreme Court has said in a criminal context:
If performance of a lawyer’s duty to advise a client that a privilege is available exposes a lawyer to the threat of contempt for giving honest advice it is hardly debatable that some advocates may lose their zeal for forthrightness and independence.
Maness, 419 U.S. at 466, 95 S.Ct. 584 (1975).
Accordingly, I respectfully dissent.

. The Seventh Circuit later found that failure to obey a court order to pay ERISA withdrawal liability may be enforced by a contempt proceeding. Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc., 155 F.3d 868, 873 (7th Cir.1998). Our court also so held in the appeal of an earlier order in this case. Chicago Truck Drivers, 207 F.3d at 505. However, both of those decisions came well after the events that give rise to this contempt action.